587 So.2d 602 (1991)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
Judy Faith ZEIGLER, Appellee.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Petitioner,
v.
Judith Faye ZEIGLER, Respondent.
Nos. 90-1351, 90-1968.
District Court of Appeal of Florida, Fifth District.
October 10, 1991.
Timothy A. Straus, of Moyer & Straus, Longwood, for appellant/petitioner.
Kenneth Friedland, of Holland, Starling, Severs, Stadler & Friedland, P.A., Titusville, for appellee/respondent.

ON MOTION FOR REHEARING EN BANC

W. SHARP, Judge.
Appellant, Department of Health and Rehabilitative Services, State of Florida, moves for a rehearing en banc, contending that our opinion in these two consolidated cases is inconsistent with Belflower v. Department of Health and Rehabilitative Services, 578 So.2d 827 (Fla. 5th DCA 1991), which was released on the same day. Because a majority of the judges on this *603 court agree the two decisions are in conflict, we grant appellant's motion for en banc rehearing. We withdraw our prior opinion and issue the following one in its place.
This proceeding began on January 28, 1988, when HRS filed a petition for dependency with regard to A.P.Z., a two-year old boy, on grounds of neglect.[1] At the arraignment in the dependency proceeding, the mother admitted dependency but was never advised by the court of her right to counsel as required by Florida Rule of Juvenile Procedure 8.560. On May 10, 1988, an amended order adjudicating the child dependent was entered. It was not appealed.
Subsequently, a permanent placement plan was filed. In the hearing, in bold type, appears the following: "You should go to the hearing to protect your rights. You can bring a lawyer. If you cannot afford a lawyer, you can ask the court to appoint you a lawyer." Several judicial review social study reports were provided to the mother over time. All included written notice of the right to counsel and the right to have counsel appointed.
On October 13, 1989, counsel was appointed to represent the child's mother and she appeared at a judicial review hearing held December 1, 1989 with her court-appointed counsel. On January 30, 1990, HRS filed a petition for termination of parental rights as to A.P.Z., and shortly thereafter counsel was reappointed for the mother in the termination proceeding.[2]
A hearing on the petition for termination of parental rights was held on April 20, 1990. The mother was represented by counsel who stipulated, for jurisdictional purposes only, that the child had been adjudicated dependent and a disposition order entered. HRS presented the testimony of several employees as well as A.P.Z.'s present foster mother. After HRS rested, counsel for the mother made a motion for a "judgment denying the petition" which the court construed as a motion to dismiss.
Counsel argued there was no evidence that the mother had been advised of her right to counsel at the dependency hearing and therefore the termination proceeding was fatally defective. The trial court took the matter under advisement and ordered a transcript of the dependency arraignment which established that the mother had not been advised of her right to counsel in accordance with the juvenile rules. Accordingly, on that basis alone, the trial court dismissed the petition for termination of parental rights. In addition, the order directed the clerk to set an arraignment on the original petition for dependency. HRS timely appealed from the dismissal of its termination petition.[3]
One month after HRS appealed in the termination proceeding, appellee-mother filed a motion to return the child to her custody. Apparently under the impression that the juvenile court no longer had jurisdiction over the child because the prior dependency adjudication had been flawed by failure to advise appellee and provide her an attorney at that stage, the successor trial judge granted the appellee's motion. However, it signaled its distress on this point by incorporating in its order "[t]his ruling is not predicated on a determination of the best interests of the child." HRS timely filed a petition for certiorari review of this order.[4] We consolidated both cases before us.
In sum, we agree that the petition for termination of parental rights should have been denied (or dismissed). However, the appellee's motion to return the child to her should also have been denied without following the procedure outlined in section 39.468(2), Florida Statutes (1987).
In 1987 the Florida Juvenile Justice Act was substantially rewritten and the grounds for permanent termination of parental rights amended. Under the current *604 statute, in order to terminate parental rights, the court must find that certain specified facts or "elements" have been proven at the termination proceeding by clear and convincing evidence. § 39.467(2), Fla. Stat. (1989). One of the "elements" is that the parent was informed of his or her right to counsel in the dependency proceeding. § 39.467(2)(c)1, Fla. Stat. (1989).[5] Only if all of the required "elements" are present is the court authorized to terminate parental rights.
If all of the elements have not been established, the statute specifically provides that the court should either enter an order placing or continuing the child in foster care under a performance agreement or permanent placement plan or enter an order returning the child to the natural parents with or without protective supervision and other required services or program participation by the parent. § 39.468(2), Fla. Stat. (1989).[6] The court is also required to enter an order of adjudication briefly stating the facts upon which its finding is made.
In this case, the trial court correctly dismissed (or denied) the petition to terminate parental rights. The petition to terminate had to be denied once it became clear that one of the statutory elements required to terminate parental rights was missing.[7] Even though new evidence of neglect (independent of the uncounseled dependency proceeding) was presented at the termination hearing, the legislative directive justified a denial of HRS's petition to sever parental rights.
But once a petition to terminate parental rights is denied, that does not return the matter to square one. Pursuant to section 39.468(2), Florida Statutes (1987), the court had to decide whether to enter an order continuing the child in foster care or returning the child to the natural mother with or without protective supervision. Whether a decision is made to retain custody with HRS or place the child with the mother, the statute requires that the court's adjudication be supported by a brief finding of facts, justifying its election. Primary and essential at all stages of such a proceeding must be a consideration of the best interest of the child. Does the child under these circumstances still require further supervision or foster care or can the child safely be returned to its parent?
The original trial court did neither. It essentially left the child in foster care. It directed the clerk to set an arraignment date on the initial petition for dependency, so that counsel could be appointed and the statutory conditions to terminate parental rights could be met in a later proceeding.
The successor juvenile judge's order returning the child to his parent was also flawed by its failure to make the findings required by section 39.468(2) and by its conclusion that the original dependency adjudication was void ab initio. The adjudication of dependency was appealable, and should have been challenged by direct appeal within thirty days. § 39.413, Fla. Stat. (1989). See In the Interest of D.M.S., 528 So.2d 505 (Fla. 2d DCA 1988). Failure to do so leaves the adjudication of dependency standing, although defective as a basis for termination of parental rights. To allow a *605 collateral attack on the dependency adjudication at this juncture is the source of mischief in this case.
The dependency provisions of chapter 39 do not contain any parallel provisions like sections 39.467(2)(c)(1) and 39.468(2) which deal with termination of parental rights. True, the juvenile rules provide that parents should be advised of their right to counsel at "each stage" of the proceedings, but that is a far cry from making void all proceedings where such a rule is not adhered to. Further, there is no "fundamental" or constitutional right to counsel at the dependency stage. In Interest of C.L.C., 440 So.2d 647 (Fla. 5th DCA 1983); Fredrick v. State, Department of Health and Rehabilitative Services, 523 So.2d 1164 (Fla. 5th DCA), rev. denied, 531 So.2d 1353 (Fla. 1988).
In White v. Department of Health and Rehabilitative Services, 483 So.2d 861 (Fla. 5th DCA 1986), this court held that failure to advise a parent of the right to counsel at the dependency stage when the dependency findings and evidence was used as a basis to adjudicate termination of parental rights justified a reversal of the termination order. But in that case, we did not also hold that the underlying dependency adjudication was void ab initio because of the failure to advise of the right to counsel. We left the dependency determination intact and operative. That is what we should do in this case.
Accordingly, we affirm the trial court [Case No. 90-1351], but we quash the order returning the child to appellee [Case No. 90-1968]. We remand this cause to the trial court for entry of an order, pursuant to section 39.468(2), after an appropriate hearing.
AFFIRMED as to Case No. 90-1351; order QUASHED as to Case No. 90-1968; REMANDED for further proceedings.
DAUKSCH, COBB, HARRIS, PETERSON, GRIFFIN and DIAMANTIS, JJ., concur.
COWART, J., dissents with opinion in which GOSHORN, C.J., concurs.
COWART, Judge, dissenting.
In January, 1988, a Petition for Dependency was filed seeking to have A.P.Z., a child, declared dependent. At the arraignment in the dependency proceeding, the mother of the child was not advised by the court of her right to counsel as required by Florida Rule of Juvenile Procedure 8.560(a)(1).[1] Thereafter based on admissions by the mother acting without counsel, an order was entered adjudicating the child dependent. Five months later in connection with a judicial review, an order was entered appointing counsel for the mother. Three months later a Petition for Termination of Parental Rights was filed and pursuant to section 39.465(1), Florida Statutes,[2] counsel was appointed to represent the mother in the termination proceeding.
Section 39.467(2)(c)1., Florida Statutes, provides that at the adjudicatory hearing on a Petition for Termination of Parental Rights it must be proven by clear and convincing evidence that the parent was informed of his right to counsel in the dependency proceeding pursuant to the Florida Rules of Juvenile Procedure.
After HRS rested its case at the hearing on the petition for termination of the mother's parental rights, her counsel moved the court for a judgment denying the petition calling the court's attention to the fact that HRS had failed to prove that the mother had been advised of her right to counsel in the dependency proceeding. The original *606 juvenile judge took the matter under advisement, ordered a transcript of the dependency arraignment, and found that, in fact, the mother had not been advised of her right to counsel as provided by Rule 8.560(a)(1). Based on that finding the original juvenile judge dismissed the Petition for Termination of Parental Rights and directed the Clerk to set an arraignment on the original Petition for Dependency.
HRS appealed the order dismissing the Petition for Termination of Parental Rights and did not pursue the original prosecution of the Petition for Dependency. During the pendency of the appeal the mother filed a motion in juvenile court to have her child returned to her. A successor juvenile judge granted the mother's motion and HRS petitioned this court for certiorari review of the order returning the child to the mother. We have combined and considered both the HRS appeal of the order dismissing the Petition for Termination of Parental Rights and the Petition for Certiorari Review of the order returning the child to its mother. These orders should be affirmed.
Section 39.468(2), Florida Statutes, provides in short that if HRS fails to prove a petition for the permanent termination of parental rights, the juvenile court shall enter an order placing or continuing the child in foster care or returning the child to its natural parents. This statutory provision is necessarily subject to certain constitutional restrictions and assumptions. The assumptions appear to be that the child has previously been the subject of an order of dependency committing the child to the temporary legal custody of HRS and that dependency order stands valid and effectual after the denial of the petition for permanent termination.
If the permanent termination proceeding follows, as it often does, a valid order adjudicating dependency and committing the child to the temporary legal custody of HRS for placement in foster care (sections 39.409 and 39.41(1)(d), Florida Statutes), then, of course, upon the failure of HRS to prove its petition for permanent termination, the trial court may forthwith "enter an order ... continuing the child in foster care ..." as section 39.468(2), Florida Statutes, contemplates. On the other hand, if the custody of the child has not theretofore been the subject of a valid petition, proceeding, and adjudication of dependency (see sections 39.404, 39.405, 39.408 and 39.409, Florida Statutes) merely because HRS has failed to prove a petition for permanent termination of parental rights does not permit a trial court to summarily enter an order placing the child in foster care without violating due process relating to notice and opportunity to be heard under the statutory provisions cited above.
If, for any reason, there is no valid and subsisting order adjudicating dependency and committing the child to foster care, HRS, upon the denial of its petition for permanent termination of parental rights, is free to immediately take the child into custody under section 39.401, Florida Statutes, and to institute proceedings to have the child declared dependent or "in need of services" and its custody temporarily committed to HRS for foster care under section 39.41(1)(d) or section 39.442(2)(a)4, Florida Statutes. If there is no valid order adjudicating dependency, and HRS is not interested in prosecuting a pending dependency proceeding, or initiating a new one and a permanent termination proceeding has been decided adverse to HRS, then the juvenile court should order the child returned to its natural parents.
In this case the original juvenile judge considered that the failure of the court to advise the mother at the arraignment in the dependency proceeding of her right to have counsel present, as required by Florida Rule of Juvenile Procedure 8.560(a)(1), not only justified the dismissal (denial) of the petition for termination of parental rights,[3] but also invalidated the prior dependency proceeding and the prior order *607 adjudicating the child dependent.[4] The original juvenile judge was correct in both particulars. The original juvenile judge's thought was that, in view of the infirmities in both proceedings, the proper thing to do was to revert to the arraignment stage in the original dependency proceeding at which stage the mother's right to be advised of a right to counsel had been violated.[5] After losing the permanent termination proceeding, instead of proceeding with a new arraignment on the initial petition for dependency and prosecuting that proceeding in accordance with the opportunity offered by the original juvenile judge's order, as set forth in the note below, HRS elected to only appeal the order dismissing the petition for permanent termination.
At this juncture, the successor juvenile judge was faced with a motion by the child's mother to return custody of the child to the mother. At this point HRS had declined to prosecute the initial dependency petition, there was no valid order adjudicating dependency and the permanent termination proceeding was dismissed and no longer pending, therefore, the successor judge concluded that there was no justiciable controversy before him and that "the continued detention of the child in the care of the Department is without legal basis" and that in that posture the child should be returned to its mother. The successor judge entered an order returning the child to its mother but noted that decision was not predicated on an affirmative determination that such action was in the best interest of the child, by implication meaning there was nothing for the juvenile judge to do but to return the child to its mother.[6] When the successor juvenile judge queried HRS about the applicability of section 39.473(3), HRS took the position that Florida Rule of Juvenile Procedure 8.840(a) precluded the juvenile court from returning a child to its parents during the pendency of an appeal by HRS from an order denying the petition for permanent commitment. The successor juvenile judge correctly ruled against HRS as to that contention and accordingly ordered the child returned to its mother.[7]
While it can be correctly stated that the petition for termination of parental rights should have been denied rather than dismissed (a correct but rather formalistic and technical distinction[8]), under the circumstances of this case it is not correct to assume that the successor juvenile judge found or assumed that the return of the child to its mother was not in the best interest of the child and in view of the decision of HRS to not prosecute on the original dependency petition as suggested *608 by the original juvenile judge and its insistence on an appeal to vindicate its erroneous position before the juvenile court as to the applicability of Rule 8.840(a), the order of the successor judge returning the child to its mother was not erroneous.
GOSHORN, C.J., concurs.
NOTES
[1] The minor's father is deceased and a half-brother has been placed with his natural father and is not a subject of the proceedings.
[2] § 39.465(1), Fla. Stat. (1987).
[3] Case No. 90-1351.
[4] Case No. 90-1968.
[5] Section 39.467(2)(c)1 states:

2. The child was adjudicated dependent pursuant to 39.409; and
* * * * * *
(c)1. The parent was informed of his right to counsel in the dependency proceeding pursuant to the Florida Rules of Juvenile Procedure.
[6] Section 39.468(2) provides:

If the court finds that all of the elements of s. 39.467(2) have not been met the court shall:
(a) Enter an order placing or continuing the child in foster care under a performance agreement or permanent placement plan; or
(b) Enter an order returning the child to the natural parent or parents with or without protective supervision and other required services or program participation by the parent.
[7] HRS's reliance on Fredrick v. State, Department of Health and Rehabilitative Services, 523 So.2d 1164 (Fla. 5th DCA), rev. denied, 531 So.2d 1353 (Fla. 1988), is misplaced since Fredrick was decided based on the 1985 Juvenile Justice Act, which was prior to the amendment requiring proof that a parent was advised of his or her right to counsel in the dependency proceeding in accordance with the Rules of Juvenile Procedure.
[1] Applicable to dependency proceedings the Rule provides in part:

Rule 8.560. Providing Counsel to Parties
(a) Duty of the Court.
(1) At each stage of the proceeding the court shall advise the parent, guardian or custodian of their right to have counsel present.
[2] Applicable to termination of parental rights, the statute provides in part:

39.465 Right to Counsel; guardian ad litem. 
(1)(a) At each stage of the proceeding under this part, the court shall advise the parent, guardian, or custodian of his right to have counsel present.
[3] See section 39.467(2)(c)1., Florida Statutes; White v. Department of H.R.S., 483 So.2d 861 (Fla. 5th DCA 1986); and In re M.D.A., 517 So.2d 711 (Fla. 4th DCA 1987).
[4] The issue as to the underlying order adjudicating dependency resulting from failure to advise the parent of their right to have counsel per Rule 8.560(a)(1), was not raised or presented in White v. Department of HRS, 483 So.2d 861 (Fla. 5th DCA 1986). One reason might be that Rule 8.560 was added December 28, 1984, effective January 1, 1985 (462 So.2d 399), while the dependency petition in White v. HRS was filed on January 4, 1984 and the children in that case were adjudicated dependent on February 16, 1984. White v. HRS cited A.T.P. v. State, 427 So.2d 355 (Fla. 5th DCA 1983) which was based on due process requirements noted in In the Interest of D.B., 385 So.2d 83 (Fla. 1980) and section 39.406, Florida Statutes.
[5] Paragraph 2 of the order dismissing the petition for permanent termination provides:

... that the clerk is hereby directed to set an arraignment on the initial petition for dependency and this matter shall proceed in accordance with law from that stage forward.
[6] The order of the successor juvenile judge returning the child to his mother effectually complied with section 39.468(2)(b) which requires that after an adjudicatory hearing on a Petition for Termination of Parental Rights, if the court does not grant the petition, the court should enter an order either placing or continuing the child in foster care or enter an order returning the child to the natural parent.
[7] Section 39.473(3), Florida Statutes, and Rule 8.840(a) prohibit HRS (or other child placing agencies) from placing the child for adoption while the natural parents are appealing an order permanently terminating their parental rights.
[8] When a party seeking affirmative judicial relief in a trial court fails in the proof of its petition or complaint the requested relief should be "denied" but then generally in the absence of a pending counterclaim, the judicial labor in the cause being completed, any temporary relief should be terminated, the cause, rather than merely the petition or complaint "dismissed" and the parties sent forth finally "without day" (meaning without a future date being fixed for their required return to court) all in accordance with orderly, proper and time-honored legal practice.